### HURWITZ–MINTZ FURNITURE CO. v. EDWARD B. FABACHER AUCTION EXCHANGE, Inc. *

### No. 16211.

Court of Appeal of Louisiana. Orleans.
April 6, 1936.

*Rehearing denied May 4, 1936.

Samuel J. Tennant, Jr., of New Orleans, for appellant.

Joseph Rosenberg, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, a commercial copartnership, is engaged in the furniture business in the city of New Orleans. On January 14, 1935, it sold and delivered to one Lionel Cory, under chattel mortgage, certain household furniture. The chattel mortgage bearing on the furniture was for the sum of $417.20, and was duly recorded in the office of the recorder of mortgages for the parish of Orleans.

Plaintiff's evidence shows that on or about March 13, 1935, Cory called on Mr. Hurwitz, one of the members of plaintiff, and informed Hurwitz that he, Cory, had lost his position and was unable to make further payments on the furniture. Cory requested that Hurwitz take the furniture back in full settlement of Cory's obligation to the plaintiff. Hurwitz told Cory to call and see him on the following day, and that, at that time, Hurwitz would see what could be done about the matter. On the following day, March 14, 1935, Cory failed to appear at plaintiff's place of business, and Hurwitz sent one of plaintiff's salesmen to Cory's residence to find out what had happened. On March 15, 1935, plaintiff's salesman informed Hurwitz that Cory had moved from the premises situated at 3208 Frenchmen street, and that the furniture covered by the chattel mortgage had been taken out.

The premises where Cory was living during this time was a double house; one side thereof being occupied by a man named Seimssen. Seimssen notified the plaintiff that on March 14, around midnight, the truck of Edward B. Fabacher Auction Exchange, Inc., defendant herein, had called at the premises of Cory and had removed the furniture covered by the chattel mortgage. Hurwitz immediately communicated by telephone with the defendant company, but was unable to locate Mr. Edward Fabacher, the president and manager of the defendant corporation. However, on March 17, Hurwitz, having in the meantime consulted the plaintiff's attorney, located Fabacher at defendant's place of business. Hurwitz was accompanied by his attorney on that occasion, and they requested Fabacher to tell them what had been done with Cory's furniture. Fabacher at first denied that he knew anything about the matter, but, upon a threat by Hurwitz to bring criminal charges against him, he admitted that he had purchased some linoleum at the premises occupied by Cory. He denied, however, having bought any other property covered by the chattel mortgage.

As a consequence of the above-alleged actions on the part of the defendant, plaintiff brings this suit for damages, claiming that the defendant purchased property secured by the chattel mortgage, knowing that such chattel mortgage was in existence, and fraudulently sold and secreted the furniture, and as a result the plaintiff was deprived of the right accorded it to seize and sell the mortgaged property in satisfaction of Cory's indebtedness. Plaintiff claims that because of the illegal acts charged it has been damaged in the sum of $299.99.

After a hearing, the trial court found for plaintiff in the sum of $209.94, and the defendant has appealed.

The first defense to the suit is raised by way of exception of no cause of action. This claim is based upon the contention that the chattel mortgage, being an accessory obligation to the principal debt, that before plaintiff was entitled to file this suit it was incumbent upon it to allege and prove that it had exhausted all recourse against Cory, the principal debtor. We find no merit in this claim because, if the defendant, through fraud and de-

ceit, has deprived the plaintiff of the security which plaintiff once had by virtue of the chattel mortgage, then in such case the defendant has committed an offense which will be redressed in damages under the provisions of article 2315 of the Revised Civil Code.

The defense to the suit on its merits, as set forth in defendant's answer, is a denial of the fraud and deceit charged against it. It further excuses itself from liability on the ground that it was in good faith in purchasing the furniture from Cory and thereafter disposing of said furniture in the usual course of its business.

In order to rebut the evidence presented by plaintiff, which is substantially set forth above, defendant relies mainly on the testimony of Fabacher, its president and manager. This witness testifies as follows: That on or about March 12, a man named Lionel "Curry" called upon him with reference to purchasing some furniture which "Curry" had for sale. Fabacher went out to see the furniture, and offered to purchase it for the sum of $150; that "Curry" told him that the property was free from debt; that notwithstanding this, in accordance with the custom of the business, he went to the mortgage office the following day to ascertain whether there were any recorded chattel mortgages against this furniture in the name of Lionel "Curry." In checking the mortgage records, Fabacher says that he discovered that there was a chattel mortgage on furniture owned by a man named Lionel Cory, 2512 Governor Nicholls street, but that inasmuch as this man had given him the name of Lionel "Curry," and inasmuch as the furniture was stored at Frenchmen street and not at Governor Nicholls street, that he, Fabacher, assumed that it was not the same person with whom he was dealing. Fabacher further states that he gave to "Curry," in payment of the purchase price of the furniture, a check for the sum of $150, dated March 12, 1935. This check is made payable to cash. When questioned why he made the check payable to cash, he avers that this was customary in his business. When interrogated as to why the check was dated March 12, when it was actually given in payment of the purchase price on March 14, he replied that the check had already been dated prior to the time of its actual delivery to "Curry."

Fabacher further testifies that he and his employee went out to "Curry's" premises about 7:30 p. m. on March 14 to get the furniture; that the reason for the delay in calling for the furniture was that defendant's truck was undergoing repairs and was not delivered to defendant until shortly after 6 p. m. on that day. The furniture, so he says, was removed from the premises between 7:30 and 11 o'clock p. m., and the delay in removal was due to the fact that it was necessary to obtain a wrench to disconnect the stove. Fabacher is corroborated in these statements by his employees, White and Etheridge. Fabacher further testified that after he became possessed of the furniture it was removed to defendant's place of business, and that most of it was sold on the following day to different purchasers.

Questioned regarding the vists of Hurwitz and plaintiff's attorney to his place of business, he answers that he was never requested to tell them whether he had purchased the furniture or not; that these men called upon him and threatened him with criminal prosecution; and that they never asked him at any time if he had purchased the furniture.

The trial judge, in finding for plaintiff, evidently did not believe Fabacher's testimony. We have repeatedly stated that we will not disturb findings of the trial judge on questions of fact, unless they are manifestly erroneous. We are unable to perceive any vices in the judgment. On the contrary, it appears to us, from the evidence presented, that Fabacher had knowledge that the furniture which he purchased from Cory was incumbered with a chattel mortgage in favor of the plaintiff, and that he, nevertheless, secretly removed the furniture from the premises in the nighttime, and immediately disposed of it to persons unknown, and that he thereafter fraudulently withheld information regarding the transaction, and the circumstances thereof, from the plaintiff. The effect of these wrongdoings resulted in damage to the plaintiff. See Covington v. Matlock, 10 La.App. 445, 121 So. 355.

The judgment is therefore affirmed.

Affirmed.